```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA      :
          Plaintiff,          :
     v.                       :    No. 3:04CR264(EBB)
                              :
MYSHION CATO                  :
          Defendant.          :
                              :
```

**RULING ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL
AND MOTION FOR NEW TRIAL**

On September 8, 2004, a Grand Jury returned a one-count Indictment against the Defendant, Myshion Cato ("Cato"), charging him with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). On January 27, 2005, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, Defendant orally moved for judgment of acquittal at the close of the Government's evidence at trial. Tr. Vol. 1 at 160. After a hearing on the motion, the Court reserved decision. On January 31, 2005, a unanimous jury found Cato guilty. On February 7, 2005, Cato filed a written Motion for Judgment of Acquittal [Doc. No. 44], pursuant to Fed R. Crim. P. 29, and a written Motion for New Trial [Doc. No. 45], pursuant to Fed. R. Crim. P. 33. Defendant filed a memorandum of law in support of his motions on April 29, 2005. For the reasons stated below, Defendant's Motion for Judgment of Acquittal [Doc. No. 44] and Defendant's Motion for New Trial [Doc. No. 45] are DENIED.

I. BACKGROUND

    A.  The Indictment

The Indictment charged Defendant with being a felon in possession of a firearm. Specifically, the one-count Indictment charged that on or about May 1, 2004, in the District of Connecticut, the Defendant, having been convicted of a prior felony in the State of Connecticut, did knowingly possess in and affecting commerce, a firearm, that is, a Smith and Wesson 9-millimeter pistol, bearing serial number VAD3729, which had been transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)(1).

    B.  Evidence Adduced at Trial

The Government and Defendant presented testimony and documentary evidence over three days of trial. Viewing the evidence in the light most favorable to the Government, the evidence adduced at trial established, *inter alia*, the following:

Shortly after midnight on May 1, 2004, Stamford, Connecticut Police officers observed a tan Ford Taurus with dark, after-market tinted windows traveling down the street. Determining that the window tint violated state law, the police officers pulled over the Taurus. As the officers approached the vehicle, they saw the silhouette of a person, later identified as Defendant, sitting calmly and still in the front passenger seat.

Tr. Vol. 1 at 27, 41.  The driver lowered his window, and the officers directed Lamar Walker, the driver, to hand over his license.  The passenger, Defendant, was directed to keep his hands on the dashboard.  When asked for identification, Walker gave the police a Georgia license, which was determined to be expired.  Walker then gave the police the Connecticut license they observed in his wallet, which they subsequently determined had been suspended.  Walker was then asked to step out of the vehicle, whereupon he was placed in the rear of the police car.

Once Walker stepped out of the car, Defendant's body language changed, and his hands trembled as if he were nervous or scared.  Id. at 31.  At one point, Defendant removed his hands from the dashboard and motioned as if he were trying to reach something by his legs or feet.  Id. at 32.  One of the officers told him to put his hands back on the dashboard, and Defendant complied.  Defendant was asked whether there were any guns or drugs in the vehicle; he replied that there were not.  Id. at 31-32.  Defendant was asked to provide identification, which he did, and then he was asked to exit the vehicle.  The officer had his flashlight shining into the car, and as Cato lifted his right foot and began exiting the vehicle, the officer saw a black handgun under Defendant's right foot.  Id. at 32-34.  Once the officer saw the handgun, he grabbed Defendant and pulled him out

of the vehicle, patted him down, handcuffed him, and placed him in the rear of another patrol car.  Id.  A Smith and Wesson 9-millimeter semi-automatic handgun was recovered from the floor on the passenger side of the vehicle.  It was in ready position – the magazine was in, the hammer was cocked back ready to be fired, and the safety was off.  Id. at 62-63.  The gun, at the time the police retrieved it from the vehicle, was capable of being fired with "light pressure of the trigger finger."  Id. at 63.

Defendant stipulated that he had a prior felony conviction in the State of Connecticut, and that the firearm in question had previously moved in interstate commerce.

Additionally, testimony established that, pursuant to a search warrant, a search of Walker's bedroom, approximately five months after the arrest, yielded a letter written by Defendant and sent to Walker, the driver of the vehicle, related to Defendant's arrest for gun possession.  A second letter written by Defendant and sent to Walker was obtained by the Government from Walker's attorney during trial, and both letters, which discussed the arrest and gun charge, were admitted into evidence.

After the Government rested its case, Defendant presented additional testimony that the search of Walker's bedroom, five months after the arrest, yielded one 9-millimeter bullet, found

in Walker's bathrobe.  Id. at 162-163.  Testimony also established that the 9-millimeter handgun is the most common semi-automatic handgun.  Id. at 165.

And finally, Defendant presented testimony establishing that, after the incident, Walker, the driver, told the Defendant's aunt and a mutual friend that he owned the gun and would take responsibility for it.

C. The Jury's Verdict

After approximately two-and-one-half hours of deliberation, the jury unanimously found the Defendant, Myshion Cato, guilty beyond a reasonable doubt on Count One of the Indictment, charging him with being a Felon in Possession of a Firearm under 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)(1).

II. STANDARD OF REVIEW

Rule 29(a) of the Federal Rules of Criminal Procedure provides, in pertinent part, that the Court, on the Defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a).  A defendant challenging the weight of the evidence supporting a conviction "shoulders a heavy burden." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotations and citation omitted).  A district court will disturb a jury's verdict and enter a judgment of acquittal

5

"only if, after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). See also United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999). When considering a motion for a judgment of acquittal, "the court must be careful to avoid usurping the role of the jury." Id. at 129.  The court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  Id.  (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotations and citation omitted)). A Rule 29 motion does not give the trial court "an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." Id. (internal quotations and citation omitted).

   The Court "consider[s] the evidence in its totality, not in isolation," Autuori, 212 F.3d at 114 (citation omitted), and "the government need not 'exclude every reasonable hypothesis other than that of guilt.'" Guadagna, 183 F.3d at 130 (quoting Holland

v. United States, 348 U.S. 121, 139 (1954)).  In addition, a jury is entitled to reach its verdict based "entirely on circumstantial evidence."  United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995) (citations omitted).  Accord United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998).

Alternatively, upon a defendant's motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a "court may vacate any judgment and grant a new trial if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  A district court has broad discretion to overturn a jury verdict and order a new trial "to avert a perceived miscarriage of justice."  United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).  The Second Circuit has set forth the following standard:

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice.  The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict.  The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted.

United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (internal citations and quotations omitted).  While a district court has broad discretion to grant a new trial, it must use such discretion "sparingly and in the most extraordinary circumstances."  Id.

7

III.  DISCUSSION

Title 18, United States Code, § 922(g) provides, in pertinent part, that it is unlawful for any person who has been convicted of a felony to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g) (2000).  Defendant stipulated that he had previously been convicted of a felony in the State of Connecticut, and that the handgun in question had previously traveled in interstate commerce, so the only element of 18 U.S.C. § 922(g) which remained for the Government to prove at trial was that Defendant knowingly possessed the firearm at issue, the Smith and Wesson 9-millimeter pistol bearing serial number VAD3729.

In arguing for judgment of acquittal, or alternatively, a new trial, Defendant specifically contends that the evidence was insufficient to establish that he acted knowingly, that is, that he intentionally and voluntarily possessed the firearm beyond a reasonable doubt.[1]  Defendant argues instead that the evidence

---

[1] This Court's jury instruction on Count One defined "knowingly" as follows: "In order to sustain its burden of proof on the element of possession, the government must prove that Mr. Cato "knowingly" possessed a firearm.  A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness."  Jury Instructions, United States v. Cato, No. 3:04CR264(EBB) at 27.

8

"suggested the equally reasonable conclusion that Mr. Cato accidentally came into possession of the firearm when Walker put the gun in Mr. Cato's vicinity immediately before the police arrived at the car." Defendant's Mem. at 2. Defendant argues that it is safe to assume the jury believed Lamar Walker brought the gun at issue into the car, based upon the jury's request for clarification of the legal definition of "control" during deliberations, and, therefore, the jury could only have based their verdict upon the belief that Defendant, rather than having actual possession, exercised substantial control over the gun.[2] Defendant asserts that a verdict based upon this premise is inconsistent with the Court's instructions, and therefore legally unsound, because there was insufficient evidence to establish beyond a reasonable doubt that Defendant's possession of the firearm was intentional and voluntary, rather than due to ignorance, mistake, accident, or carelessness.

Defendant "shoulders a heavy burden" in challenging the weight of the evidence supporting conviction. Autuori, 212 F.3d at 114. This Court will defer to the right of the jury to weight the evidence, assess the credibility of witnesses, and draw reasonable inferences, and will not disturb the jury's verdict if

---

[2] Defendant asserts that the jury would not have asked for a legal definition of "control" if they believed Defendant brought the gun into the car, and therefore, the jury must have believed that Walker brought the gun into the car and it later "ended up by Mr. Cato's foot." Defendant's Mem. at 4. In fact, the gun was *under* Cato's foot.

"*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Guadagna, 183 F.3d at 129-30 (internal citations omitted) (emphasis in original). Furthermore, the Defendant must demonstrate that there is "a real concern that an innocent person may have been convicted" before a court will exercise its discretion under Rule 33. Ferguson, 246 F.3d at 134. The evidence at trial established that the firearm at issue was under Defendant's right foot during the traffic stop. Officer Yilmaz shined his flashlight directly upon the firearm, and there was no question but that it was directly under Defendant's foot, not merely "near" his foot, or "by" his foot, as Defendant asserts in his memorandum of law. Thus, the only question that remained for the jury to consider was whether the Defendant knowingly possessed the firearm, with the safety off, the magazine in and fully loaded, and the hammer cocked back, that was located directly under his right foot.

As an initial matter, the Government need not have negated every reasonable hypothesis other than that of guilt. Guadagna, 183 F.3d at 130. See United States v. Liranzo, 385 F.3d 66, 69 (1st Cir. 2004) ("The government need not present evidence that precludes every reasonable hypothesis inconsistent with guilt in order to sustain a conviction. Rather the jury is at liberty to

10

select freely among a variety of reasonable alternative constructions of the evidence."). Rather, the Government's burden was only to put forth sufficient evidence for the jury to find beyond a reasonable doubt that Cato knowingly and voluntarily possessed the firearm at the time of the traffic stop.

To meet its burden under 18 U.S.C. § 922(g)(1), the Government may put forth proof of either actual or constructive possession. See United States v. Dhinsa, 243 F.3d 635, 676 (2d Cir. 2001); United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998). "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object." Payton, 159 F.3d at 56. Such possession may be sole or joint, Dhinsa, 243 F.3d at 677, and "[t]he government need not disprove that the weapon was subject to the dominion and control of others." Payton, 159 F.3d at 56. See also United States v. Tribunella, 749 F.2d 104, 112 (2d Cir. 1984). However, possession cannot be established merely because an individual was present at the location where a firearm was seized. See United States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988).

Here, a rational fact finder could determine that because Defendant had his right foot on the gun, and it was easily within his reach, he had actual physical control of the gun at that

11

time. And, a rational jury could have found that, given that the gun was directly under Cato's right foot, loaded, with the safety off, in a cocked position, and that Officer Yilmaz saw no movements on the passenger side of the vehicle as he approached, Cato also had constructive possession because he had the "power and intention to exercise dominion and control over [the firearm]," regardless of Walker's relationship to the gun. Payton, 159 F.3d at 56. Even assuming *arguendo* that Walker possessed the gun prior to getting in the vehicle with Cato or even just prior to the traffic stop, because constructive possession can be either sole or joint, "[i]t is of no moment that other individuals also may have exercised control over the weapon[]," Dhinsa, 243 F.3d at 677, when the evidence at trial, viewed in the light most favorable to the Government, established Cato's ability and intent to exercise control over the weapon. See also United States v. Gaines, 295 F.3d 293, 300 (2d Cir. 2002) ("possession need not be exclusive" under constructive possession theory). Defendant was not merely present when the gun was seized, Rios, 856 F.2d at 496; Defendant was keeping his right foot upon the gun and had made a motion as if he were reaching for something at his feet.

Although the Government did not present direct evidence that Cato placed the gun under his foot, "[p]roof of knowledge may be,

and often is, circumstantial." <u>United States v. Hastings</u>, 918 F.2d 369 (2d Cir. 1990) (internal citations omitted). The evidence at trial established that a loaded firearm, requiring only a slight touch to be fired, was under Defendant's right foot.[3] And, in the two letters written by Defendant to Walker, there was no mention that Defendant was being unfairly prosecuted, nor was there any suggestion that the gun had been anywhere other than under Defendant's right foot. Yet, Defendant argues there is a sufficient basis to reasonably conclude that he came into possession only after Walker tossed the gun in his direction during the traffic stop. It strains credibility to argue, without any supporting evidence, that a loaded gun, safety off, with the hammer cocked back, ready to be fired with the slightest effort, 1) would be tossed in anyone's direction, and 2) would be under Defendant's foot, in that state, without Defendant intentionally and voluntarily having it under his foot. Furthermore, Officer Yilmaz testified that the passenger, Defendant, remained calm and still as the Officer approached the vehicle. Had a loaded gun, safety off and hammer cocked back actually been tossed in Defendant's direction during the traffic stop, it is unlikely he would have remained still.

Even if Walker possessed the gun prior to the traffic stop,

---

[3] "Some circumstantial evidence is very strong, as when you find a trout in the milk." HENRY DAVID THOREAU, JOURNAL, November 11, 1854 (1906).

13

and Defendant's possession was a mere accident, as Defendant argues, an innocent possession defense will only lie where Defendant's actions "demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct." United States v. Williams, 389 F.3d 402, 405 n.4 (2d Cir. 2004) (quoting United States v. Mason, 233 F.3d 619, 624 (D.C. Cir. 2000)).[4] In Mason, the D.C. Circuit Court of Appeals reversed Defendant's conviction and remanded the case for a new trial, finding Defendant established sufficient facts to warrant an innocent possession jury instruction be given. The Court cautioned that, "it is important to recall that it is the retention of a firearm, rather than the brief possession for disposal . . ., which poses the danger which is criminalized by felon-in-possession statutes." Id. at 625 (internal quotations and citation omitted). In United States v. Paul, the Second Circuit rejected the Defendant's argument that his possession of a gun was "too fleeting" to constitute possession under 18 U.S.C. § 922(g) where he, by his own account, wrestled a gun away from a man who had earlier fired two shots at Defendant's leg, took

---

[4] In United States v. Mason, the Defendant, a delivery truck operator, testified that he found a brown paper bag containing a gun and ammunition in a school area, and took possession of the gun to keep it away from the children at the school, intending to give the weapon to a Library of Congress police officer whom he expected to see on his delivery route later that day. 233 F.3d at 621.

possession of the weapon, and fired it into the ground until all of the bullets were discharged, to render it safe, and then threw the empty gun onto the floor of a bar.  110 F.3d 869, 870 (2d Cir. 1997).  The Second Circuit acknowledged that "[c]ases may be imagined" where application of section 922(g) would be problematic, for example, a situation where a helpful bystander with a felony conviction observes "a police officer's weapon slip to the floor" unbeknownst to the officer, picks up the weapon and immediately hands it over to the officer, but that Paul's situation was not such a case.  Id. at 872.  Cato's situation is not such a case either.  This was neither "brief possession for disposal," Mason, 233 F.3d 625, nor the pursuit of an intent to turn the gun over to the police.  Williams, 389 F.3d 405 n.4.  Defendant was asked specifically whether there were any guns in the vehicle.  Had he been pursuing the intent to turn over the gun under his foot to the police, a rational jury could assume that he would have taken his opportunity to do so, when questioned by Officer Yilmaz, rather than to state, as he did, that there were no guns in the vehicle, when, in fact, there was a semi-automatic firearm, fully loaded, under his right foot.  United States v. Williams, a recent case from the Tenth Circuit, is illustrative.  No. 04-3175, 2005 U.S. App. LEXIS 6346 (10th Cir. 2005).  There, the Defendant argued that his possession of

15

the gun in question was "too fleeting" to constitute a violation of section 922(g) because another man had only just pushed the gun upon him as they sat together at a booth in a diner and were questioned by police officers. In rejecting Williams's argument, the Court noted that 18 U.S.C. § 922(g) does not require evidence of a lengthy possession, and found that there was sufficient evidence for a rational jury to find that Defendant knowingly possessed the gun found in his pocket, regardless of its length in residence there. Id. at *11.

Here, Defendant's control and possession of the firearm at the time of the traffic stop was unequivocal. Even if Walker had only just pushed it upon him or tossed it in his direction, and his association with the gun under his foot was only "for a mere second or two, unless [he] truly did not know that what he possessed was a firearm or there was some recognized legal justification for his holding the firearm, § 922(g) will still impose criminal liability." United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999). No evidence was presented at trial that the gun had been anywhere other than under Defendant's right foot, or that the Defendant was unaware that the item under his foot was a gun.

Finally, because "[t]he government need not disprove that the weapon was subject to the dominion and control of others," it

16

is immaterial that the bullet found in Walker's bathrobe five months after the arrest matched the bullets in the gun recovered from the vehicle.  Payton, 159 F.3d at 56.

On the evidence presented at trial, a rational jury could conclude that Cato knowingly possessed the gun under his right foot.  Furthermore, taking into account all the evidence, this Court is "satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict."  Ferguson, 246 F.3d at 134.

## CONCLUSION

Because Defendant has not shown that the "evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt," Guadagna, 183 F.3d at 130 (internal quotations and citation omitted), this Court will not disturb the jury's verdict.  Furthermore, because Defendant has not shown that letting the jury's verdict stand would be a "manifest injustice" and that there is "a real concern that an innocent person may

have been convicted," Ferguson, 246 F.3d at 134, this Court declines to exercise its broad discretion under Rule 33 and order a new trial. Accordingly, Defendant's Motion for Judgment of Acquittal [Doc. No. 44] and Defendant's Motion for New Trial [Doc. No. 45] are DENIED.

                              SO ORDERED.

                              _____
                              ELLEN BREE BURNS
                              SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this ___ day of May, 2005.